IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERNANDO WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT COLLINS, et al. | : | NO.  10-4995 |

## REPORT AND RECOMMENDATION

**ELIZABETH T. HEY**
**UNITED STATES MAGISTRATE JUDGE**                                   **August 31, 2011**

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254, by Hernando Williams, an individual currently incarcerated at the State

Correctional Institution at Frackville, Pennsylvania.  For the reasons that follow, I

recommend that the petition be denied.

## I.      FACTS AND PROCEDURAL HISTORY

The underlying facts are as follows, in brief:  "On the evening of August 25, 2004,

co-conspirator Daniel Harold entered a gas station in Springfield Township and

demanded money from the shift manager at gunpoint.  The shift manager complied, and

Harold exited the store and fled in a taxicab driven by Williams."  Commonwealth v.

Williams, No. 1447 EDA 2006, at 1-2 (Pa. Super. Dec. 12, 2006).  Harold pleaded guilty

and testified against Williams at trial, and Williams testified in his own defense.

On January 6, 2006, after a trial before the Honorable Frank T. Hazel of the Court

of Common Pleas of Delaware County, a jury convicted Williams of robbery and criminal

conspiracy.  N.T. 1/6/06 at 175-76.  On March 6, 2006, Judge Hazel sentenced Williams

to 10-to-20 years' incarceration for both the robbery and conspiracy, the sentences to run concurrently.  N.T. 2/21/06 at 10-11.

Williams appealed his conviction, and Judge Hazel's opinion reflects that Williams challenged the weight and sufficiency of the evidence on the robbery conviction in his Concise Statement of Matters Complained of on Appeal.  See Commonwealth v. Williams, No. 864-05, Opinion, at 2 (Del. C.C.P. July 27, 2007).[1]  On December 12, 2006, the Superior Court affirmed the judgment of sentence, addressing only the weight of the evidence.  Commonwealth v. Williams, No. 1447 EDA 2006 (Pa. Super. Dec. 12, 2006).  Williams filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on June 14, 2007.  Commonwealth v. Williams, No. 142 MAL 2007 (Pa. Jun. 14, 2007).

On July 19, 2007, Williams filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-9551.  Counsel appointed to represent Williams in pursuing his collateral appeal filed an amended petition alleging several claims of ineffective assistance of trial counsel:

1. Counsel failed to file and litigate a motion to suppress Williams' statement;

2. Counsel failed to adequately investigate and speak to two potential witnesses;

3. Counsel failed to investigate the location and duration of Daniel Harold's incarceration;

_____

[1]Williams' Concise Statement of Matters Complained of on (direct) Appeal and his appellate brief are not contained in the state court record.

2

4.  Counsel failed to object to remarks made by the prosecutor which were
     prejudicial and denied Williams a fair trial;

5.  Counsel failed to adequately prepare and discuss strategies with Williams.

On June 5, 2006, Judge Hazel held an evidentiary hearing on Williams' allegation that trial counsel was ineffective for failing to seek suppression of Williams' statement on the grounds that he had not been given his <u>Miranda</u> warnings[2] at the time he gave the statement.  <u>N.T.</u> 6/5/08 at 3.  On June 16, 2008, Judge Hazel denied Williams' claim regarding counsel's failure to seek suppression of his statement, and dismissed the remaining claims in the petition.  <u>Commonwealth v. Williams</u>, No. 864-05, Order (Del. C.C.P. May 9, 2008).

On appeal to the Superior Court, Williams, through counsel, presented only the claim that trial counsel was ineffective for failing to seek suppression of Williams' statement.  <u>Commonwealth v. Williams</u>, No. 864 of 2005, Rule 1925(b) Statement (C.C.P. Del. Aug. 1, 2008).[3]  On May 19, 2009, the Superior Court affirmed the denial of PCRA relief.  Although the Superior Court found that Williams was entitled to <u>Miranda</u>

[2]The <u>Miranda</u> warnings refer to the warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), informing a suspect of the right to be silent and the right to counsel in a custodial interrogation.

[3]Williams points out that he filed a Petition for Remand in the Superior Court, asking for the appointment of new counsel and seeking to include several claims of trial counsel ineffectiveness not contained in the appeal filed by counsel.  <u>See</u> Doc. 1 ¶ 12 - Ground Three(b).  That request is reflected on the Superior Court's docket sheet, but the filing is not contained in the state court record.  In its opinion affirming the denial of PCRA relief, the Superior Court denied the motion for remand.  <u>Commonwealth v. Williams</u>, No. 2111 EDA 2008, at 4 (Pa. Super. May 19, 2009).

warnings because he was subject to a custodial interrogation, the court found that

Williams had failed to establish that he suffered any prejudice by the introduction of the

statement. Commonwealth v. Williams, No. 2111 EDA 2008 (Pa. Super. May 19, 2009).

Williams' request for allowance of appeal was denied by the Pennsylvania Supreme Court

on December 1, 2009. Commonwealth v. Williams, No. 420 MAL 2009 (Pa. Dec. 1,

2009).

On September 20, 2010,[4] Williams filed this petition for habeas corpus, in which

he claims his trial counsel was ineffective for:

1.  failing to seek suppression of Williams' involuntary pretrial statement;

2.  failing to investigate and impeach Williams' codefendant with prior
    incarceration status;

3.  failing to object to prejudicial comments and misconduct of the prosecutor; and

4.  failing to properly prepare for trial.

See Doc. 1. On October 20, 2010, Williams filed a memorandum of law in support of his

petition, addressing only his first claim, and arguing that his statement admitted at trial

was both involuntary and taken in violation of Miranda. See Doc. 2. He also filed a

"Concise Statement of Material Facts Supporting the Claim," elaborating on the

---

[4]Although the petition was docketed on September 22, 2010, the federal court deems a pro se petitioner's habeas petition filed at the moment he delivers it to prison authorities for mailing. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). Because Petitioner dated the habeas petition September 20, 2010, I will assume he presented it to prison authorities on that date.

procedural history of all of the claims set forth in the petition.  <u>See</u> Doc. 3.  On November

10, 2010, he filed an Application for Leave to Amend his Memorandum of Law to add

claims.  <u>See</u> Doc. 7.[5]  In stating the claims he seeks to incorporate by amendment,

Williams adds challenges to the weight and sufficiency of the evidence supporting only

his robbery conviction.  <u>See</u> Doc. 7 at 4 (electronic filing pagination).  However, in the

attached brief, Williams seems to challenge the weight and sufficiency of the evidence to

sustain both his conviction for robbery and for conspiracy.  <u>See id.</u> at 9-12 (electronic

filing pagination).  The District Attorney responded to the petition on November 16,

2010, addressing only the claims presented in the original petition, arguing that the claim

challenging counsel's failure to seek suppression of his statement lacks merit and the

remaining claims are procedurally defaulted.  <u>See</u> Doc. 8.

---

[5]On October 31, 2010, Williams wrote to the Clerk of Court asking how to amend
his petition to include the claims he presented in his direct appeal.  He subsequently filed
the application to amend on November 10, 2010.

II.   **DISCUSSION**

A.   **Exhaustion and Default**[6]

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.  See 28 U.S.C. § 2254(b).  Under section 2254(c), a petitioner will not be deemed to have exhausted available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented, but failed to do so.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts"); see also Picard v. Connor, 404 U.S. 270 (1971).  "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights."  Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)).  The habeas

---

[6]There is no question that the petition is timely.  Williams' conviction became final on September 12, 2007, when the time for filing a petition for certiorari in the United States Supreme Court expired.  On July 19, 2007, before the habeas limitations period had even started, Williams filed his PCRA petition, tolling the limitations period.  The state courts completed review of Williams' PCRA appeal on December 1, 2009.  At that point, Williams still had an entire year to timely file his habeas petition.  He filed it on September 20, 2010.  Thus, it was timely filed.  His amendment filed on November 10, 2010, was also filed within the one-year period, and therefore the additional claims are also timely.

corpus petitioner has the burden of proving exhaustion.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

### 1.    Ineffectiveness claims

Respondents argue that Williams has failed to exhaust three of his claims in the state courts; counsel's failure to investigate the co-defendant's incarceration status, counsel's failure to object to the prosecutor's prejudicial comments, and counsel's failure to prepare for trial.  Specifically, Respondents argue that Williams never presented any of these three claims in the state court.  Although I agree that these claims are not exhausted, I disagree with Respondents' characterization.  Williams did present these claims in his PCRA petition.  See Commonwealth v. Williams, No. 864 of 2005, Amended Post-Conviction Relief Act Petition ¶ 6(C)-(E) (Del. C.C.P. Feb. 19, 2008).  Judge Hazel dismissed these claims on June 16, 2008.  See Commonwealth v. Williams, No. 864-05,Order (June 16, 2008).  However, Williams did not pursue these claims in the appeal of the denial of PCRA relief.  See Commonwealth v. Williams, No. 864 of 2005, Rule 1925(b) Statement Concise Statement of Matters Complained of on Appeal (Aug. 1, 2008).  In order for the claims to be considered exhausted, the Superior Court must have the opportunity to review them.  See Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001) (quoting In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218, Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and

relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.").  Because Williams has not presented the claims to the Superior Court, the claims are not exhausted.[7]

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile.  Lambert, 134 F.3d at 518-19.  Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default.  As the Third Circuit has held,

> claims deemed exhausted because of a state procedural bar are procedurally defaulted, and federal courts may not consider their merits unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default."

Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (quoting McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991). The "cause and prejudice" standard applies whether the default in question occurred at trial, on appeal, or on state collateral attack.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

---

[7]As previously mentioned, supra n.3, Williams asked the Superior Court to allow him to amend his appeal to include several claims of ineffective assistance of counsel -- presumably the claims abandoned in his PCRA appeal -- and the Superior Court denied the request.  That request did not serve to exhaust the claims because it did not properly present the Superior Court with the claims for review on the merits.  See O'Sullivan, 526 U.S. at 848 ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts").

Here, Williams has no avenue through which he can present these three claims to the Superior Court. He has previously presented the claims in a PCRA petition. Therefore, the claims would be considered previously litigated under state law. See 42 Pa. C.S.A. § 9544(a) (claim presented in a proceeding collaterally attacking the conviction is previously litigated). He took an appeal from the denial of relief but omitted these claims, and has no procedural mechanism to reopen that appeal. In addition, any attempt to present these claims in a subsequent PCRA petition would fail because such a petition would be untimely under state law. See 42 Pa. C.S.A. § 9545(b) (requiring filing of PCRA petition within one year of the date judgment is final). Because Williams failed to present the claims to the Superior Court and he now has no viable way of doing so, the claims are considered procedurally defaulted. In order for the federal court to review the merits of these claims, Williams must demonstrate cause and prejudice for his failure to comply with the state court's procedural rules, or establish that a failure to consider the claims will result in a fundamental miscarriage of justice.

To meet the "cause" requirement for procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-93 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). For example, a petitioner can meet the cause burden by showing that a claim was not reasonably available or that government conduct made the claim impractical. See id. (citing Carrier, 477 U.S. at 488).

9

With regard to the prejudice requirement, a habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Werts, 228 F.3d at 193 (quoting Carrier, 477 U.S. at 494). This standard essentially requires the petitioner to show that he was denied "fundamental fairness" at trial.  Id.

Here, Williams provides no reason for his failure to present these claims in his appeal of the PCRA Court's decision.  In his petition, Williams implies that his PCRA counsel failed to include these claims in the appeal.  See Doc. 1 ¶ 12 Ground Three(b). Any attempt to allege that his counsel's failure to present the claims constitutes cause must fail.  "While ineffective assistance of counsel can be cause for a procedural default, the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation." Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (citing Carrier, 477 U.S. at 488). Because Williams had no Sixth Amendment right to representation during the litigation of his PCRA petition, see Pennsylvania v. Finley, 481 U.S. 551 (1987), his counsel's alleged ineffective assistance cannot establish cause for William's procedural default.  See Coleman, 501 U.S. at 752

Williams has also not established that a failure to consider these claims will result in a fundamental miscarriage of justice. In order to satisfy this exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably

resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Carrier</u>, 477 U.S. at 496). In other words, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. <u>Id.</u> Williams has not supplemented his claims with any new evidence establishing his innocence. Thus, he has failed to provide any basis to excuse his default of these three claims.

### 2. <u>Voluntariness claim</u>

Respondents also argue that Williams failed to exhaust his claim that his trial counsel failed to seek suppression of his statement on the ground that it was not voluntary. In the state courts, Williams argued only that his trial counsel was ineffective for failing to seek suppression of the statement on <u>Miranda</u> grounds. <u>See</u> Amended PCRA Petition, at ¶ 6(A); Rule 1925(b) Statement Concise Statement of Matters Complained of on Appeal (Aug. 1, 2008); <u>Commonwealth v. Williams</u>, No. 2111 EDA 2008, at 4, 5 (Pa. Super. May 19, 2009). In order for a claim to be exhausted, the petitioner must present both the legal theory and the facts underlying the claim to the state courts for review. <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1231 (3d Cir. 1992). With respect to this claim, Williams argued to the state courts that his counsel was ineffective for failing to seek suppression of his statement on <u>Miranda</u> grounds only, exhausting that claim for purposes of habeas corpus. He has never challenged the voluntariness of the statement in the state courts. Thus, to the extent he now asserts a

11

new legal theory -- that the statement was involuntary and his counsel was ineffective for failing to challenge admission of the statement on this basis --  the claim is unexhausted and procedurally defaulted because he has no way to present such a claim to the state courts at this point.  Again, Williams provides no reason for his failure to raise this claim in his PCRA appeal and has not supplemented the claim with any showing of innocence. Therefore, the claim remains defaulted and the federal courts will not review it.

### 3.    Weight/sufficiency claim

In his proposed amendment to the petition filed on November 10, 2010, Williams challenges the weight and sufficiency of the evidence.  In the attached brief, he seems to challenge the weight and sufficiency with respect to both his conviction for robbery and for conspiracy.  See Doc. 7 at 9-12 (electronic filing pagination).  In the state courts, Williams challenged the sufficiency and weight with respect to his robbery conviction only.[8]  Thus, the challenge to the weight and sufficiency of the evidence to

---

[8]As previously mentioned, the Concise Statement of Matters Complained of on Appeal and appellate brief for Williams' direct appeal are not contained in the state court record.  In his opinion, Judge Hazel quotes from the Concise Statement in addressing Williams' issues on appeal.  "In response to the Court's Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure Defendant filed a 'Concise Statement of Matters Complained of on Appeal' raising the following issues: 'the weight and sufficiency of the evidence were insufficient to sustain a conviction for robbery.'" Commonwealth v. Williams, No. 864-05, Opinion, at 2 (Del. C.C.P. Jul. 27, 2006).  Judge Hazel proceeded to address the sufficiency and weight of the evidence supporting the robbery conviction.  In its opinion, the Superior Court indicated that Williams attacked only the weight of the evidence and therefore did not address sufficiency.  Based on Judge Hazel's statement, and in the absence of the appellate brief, I will assume that Williams challenged both the weight and sufficiency with respect to the robbery

support the robbery conviction are exhausted for purposes of habeas corpus.  The

challenges to the conspiracy conviction were not presented to the state courts, and

unexhausted.  Again, because Williams has no way to present challenges to the weight

and sufficiency of the evidence to support the conspiracy conviction, the claims are

procedurally defaulted.

It appears that Williams attempts to allege that his direct appellate counsel's failure

to raise the claim on direct appeal constitutes cause for his default.  Such a claim could

provide cause to excuse a default because direct appellate counsel is constitutionally

guaranteed.  However, for ineffective assistance of prior counsel to serve as cause to

excuse a procedural default, the habeas petitioner must first exhaust the ineffective

assistance claim itself in state court, or show cause and prejudice for that failure to

exhaust.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Here, Williams has not presented the state courts with an ineffective counsel claim

based on direct appellate counsel's failure to challenge the conspiracy conviction.  Thus,

the claim (providing cause to excuse the default of the underlying sufficiency claim ) is

unexhausted and procedurally defaulted.  Williams has not established cause for his

failure to raise this claim nor supplemented his claims with any evidence of innocence.

---

conviction, and will consider this aspect of the claim exhausted.

In the brief attached to his motion to amend, Williams seems to concede that he
did not challenge the weight or sufficiency of the conspiracy conviction in the state
courts.  See Doc. 7 at 11-12 (electronic filing pagination).

Thus, the sufficiency and weight claims with respect to the conspiracy conviction remain defaulted.  The sufficiency and weight claims with respect to the robbery conviction are exhausted.

The sufficiency claim will be addressed on the merits below.  However, a challenge to the weight of the evidence does not provide a cognizable basis for habeas relief because it raises solely an issue of state law.  See Tibbs v. Florida, 457 U.S. 31, 37–45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); see also Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir.1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"); Alamo v. Frank, No. 97–3022, 1999 WL 79659, at 1 n. 2 (E.D. Pa. Jan.15, 1999) ("It is beyond the province of this court to consider the weight, as opposed to the sufficiency, of the evidence.").  Thus, Williams is not entitled to relief on his claim challenging the weight of the evidence to support his robbery conviction.

**B.    Merits Review**

After sorting through all of Williams' allegations, he has exhausted two cognizable habeas claims; ineffective assistance of counsel for failing to seek suppression of a statement Williams made to the police on the ground that he was not given Miranda warnings, and that the evidence was insufficient to support the conviction for robbery.

14

The Antiterrorism and Effective Death Penalty Act limits federal habeas review of state court judgments by requiring federal courts to give deference to the factual findings and legal determinations of the state courts.  Werts, 228 F.3d at 195-96 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).  A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts, 288 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon the two clauses of section 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000).  First, under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. at 412-13.  Second, under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

15

of the prisoner's case." Id. at 413.  An "unreasonable application" occurs "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

### 1.    Failure to seek suppression of statement

Williams claims that his trial counsel was ineffective for failing to seek the suppression of as statement he gave to the police on the night of the incident on the grounds that he had not been given Miranda warnings prior to giving the statement. Based on my review of the trial transcript and the Superior Court's decision, Williams is not entitled to habeas relief with respect to this claim.

A claim of ineffective assistance of counsel is governed by Strickland v. Washington, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

With respect to the first prong – deficient performance – a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland,

466 U.S. at 689.  In assessing counsel's performance "'[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Rainey, 603 F.3d at 197 (quoting Strickland, 466 U.S. at 688).  To satisfy the second prong – prejudice – a petitioner must show that  "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A petitioner must satisfy both prongs in order to succeed on his claim.

Both the PCRA Court and the Superior Court concluded that Williams should have been read his Miranda rights before the police took the statement that was admitted at trial.  However, the state courts concluded that Williams' defense suffered no prejudice by the admission of the statement.  Upon consideration of the trial testimony, I conclude the state courts' determination was proper.

At trial, the jury was presented with two different stories based on the testimony of Harold and Williams.  Harold testified that Williams approached him about holding up Jim's Mobil, arranged to pick him up in the taxi later that day, and supplied the guns to be used in the robbery.  N.T. 1/5/06 at 175-76, 179, 182.  Harold testified that they first went to Manayunk so he could collect a debt from someone, and then they stopped at a girl's house.  Id. at 180-81.  According to Harold, they were both supposed to go in to rob the store, but Williams got scared, so Harold went into the store himself, collected a few items, and approached the cashier showing him a gun and said, "give me what you got in

17

the cash – you know, give me the money." Id. at 188-89.  Harold testified that when he

returned to the cab, he told Williams, "let's get out of here." Id. at 191.

     According to Harold, when a police car approached them a few traffic lights away,

Williams threw his gun to Harold in the backseat.  N.T. 1/5/06 at 192.  As they fled from

the police car, Williams hit a sewer drain and both Williams and Harold fled the car.

Harold explained that he tried to "fake out" the police by taking off his hat and glasses,

but he was arrested.  Id. at 193.  After Harold was taken into custody, he was identified by

Edward Johnson, the clerk at the Jim's Mobil.  N.T. 1/5/06 at 135, 163.  Although Mr.

Johnson noted that the robber was not wearing the hat and glasses he had been wearing in

the store, he identified Harold as the robber.  Id. at 135.  Additionally, Mr. Johnson

testified that the candy bar that the robber had purchased from Jim's Mobil was in the cab

in the plastic bag from the store.  Id.  The following morning two handguns and a hat

matching the one that the robber wore were recovered from under a minivan a block from

where Harold was arrested.  Id. at 163-64, 166-67.

     In sharp contrast to Harold's version, Williams testified that he worked as a cab

driver, running the 6 p.m.-to-6 a.m. shift.  He maintained that, while operating the cab in

West Philadelphia, he picked up Harold whom he knew from serving time in Huntingdon,

sometime after 7:00 p.m. on the night of August 25, 2004.  N.T. 1/6/06 at 18, 51-52, 85-

86.  Williams and Harold agreed that Williams would not run the meter, and that

Williams would taxi Harold around to several stops for a flat rate of $ 75.00.  Id. at 21,

88-89.  They first went to Roxborough, where Harold exited the cab and met with a

friend.  Id. at 21.  Williams waited in the cab for ten to twelve minutes until Harold

returned.  Id. 21-22.  Williams then took Harold to Manayunk[9] for a short period.  Id. at

56.  They then proceeded to City Line Avenue and Baltimore Pike, to a shopping mall

where Harold was looking for someone.  Id. at 22, 62.  Harold got out of the cab at the

Mobil station.  According to Williams, the man Harold was looking for was not there and

he returned to the cab.  Id. at 24.  Harold told Williams, "Let me go give this guy one

more call," and again left the cab.  Id. at 25.  He returned after five to ten minutes and

said, "All right.  Let's go."  Id.

    Harold then directed Williams to go eastbound on Baltimore Pike.  Id. at 27.  At

the second traffic light, a police officer passed the cab, did a u-turn to get behind the cab,

and turned on its lights and siren.  Id.  Williams testified that at that point, Harold pulled a

gun on Williams and told him not to stop.  "I'm going to start popping, I'm going to start

shooting."  Id. at 28, 72-74  Williams did eventually stop, hitting a parked car or a

drainage sewer.  Id. at 31.  He fled the car and hid under a boat on a trailer in an alley

until the police found him and he came out voluntarily  Id. at 31-32.  When questioned by

the police at the station, Williams gave statements consistent with his trial testimony

---

    [9]The transcript states that Williams took Harold to "Manning [ph]."  N.T. 1/6/06 at
56.  I infer from Williams' reference to crossing a street from Roxborough, that
"Manning" meant Manayunk.  Similarly, throughout the transcript, Roxborough is spelled
"Rocksboro."  Both Manayunk and Roxborough are sections of Philadelphia.

except that he denied knowing Harold.  See N.T. 1/5/06 at 225-28.  He explained at trial that he followed Harold's lead in denying any association, fearing that he would get in trouble for being with a known felon.  See N.T. 1/6/06 at 35, 78.

Williams spends much of his Memorandum of Law arguing that his statements to the police were inadmissible because he was not given Miranda warnings.  See Doc. 2.  However, analyzed as an ineffective assistance of counsel claim, Williams must establish not only that his counsel erred, but also that his defense was prejudiced as a result – that the outcome would have been different had counsel challenged the admissibility of Williams' statements.  See Strickland, 466 U.S. at 694.  This, he has not done.

In considering Williams' PCRA petition, Judge Hazel reviewed the evidence surrounding police questioning of Williams and concluded that Williams was in custody and that Miranda warnings were therefore required.  Commonwealth v. Williams, No. 864-05, Opinion, at 9-10 (Del. C.C.P. Sept. 8, 2008).  The Superior Court accepted this conclusion without further analysis.  Commonwealth v. Williams, No. 2111 EDA 2008, at 5 (Pa. Super. May 19, 2009).  However, the Superior Court went on to conclude, as had Judge Hazel, that Williams was not prejudiced by the failure to provide Miranda warnings.  Specifically, the Superior Court rejected Williams' arguments that by not precluding the prosecution's use of the statement, Williams had no choice but to testify and the prosecution was able to show that he lied to police when he denied knowing Harold from their time in prison together.

20

First, . . . [Williams] essentially had no chance of exoneration if he did not provide a version of the events that contradicted the inculpatory testimony of his co-conspirator, Harold.  Harold testified that [Williams] hatched the plan, provided the weapons, and provided the vehicle.  When the police eventually caught up with them, Harold and [Williams] both exited the vehicle and attempted to evade police.  If in fact [Williams] had been held at gunpoint by Harold, then the jury would be left to guess at why [Williams] did not stay in the taxi when they finally came to a stop, as the police were there to rescue him from his allegedly precarious situation and Harold had alighted from the taxi and was fleeing from the police.  Thus, without some explanation, the only inference would be that [Williams] fled because he was guilty.  In short, [Williams'] choice to testify was not motivated by the Commonwealth's ability to show that he had lied about the fact that he knew Harold, but instead was motivated by the fact that it would be the only way to explain why, despite all appearances to the contrary, [Williams] was an involuntary participant in the robbery and subsequent chase. . . .

Second, we agree with the PCRA court that suppression of [Williams'] statement would have had no practical effect on the trial.  Article I, Section 9 of the Pennsylvania Constitution states: "The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself."  Accordingly, in cases where law enforcement officers have failed to give a defendant the required **Miranda** warning, "the use of a voluntary confession for impeachment is not a violation of either the Pennsylvania Constitution as currently revised or of the fifth amendment of the United States Constitution."  **Commonwealth v. Baxter**, 532 A.2d 1177, 1178 (Pa. Super. 1987).  Thus, even if defense counsel had successfully litigated a motion to suppress the statement made by [Williams] to police, the Commonwealth still would have been permitted to cross-examine [Williams] using this prior inconsistent statement.

Id. at 7-8.

The Superior Court's analysis is sound and constitutes a reasonable application of law to Williams' case.  Williams took the stand in his defense.  Thus, although not admissible in the Commonwealth's case-in-chief, his un-Mirandized statements would have been admissible to impeach him.  See Harris v. New York, 401 U.S. 222, 226 (1971) (permitting impeachment by use of statement taken in violation of Miranda).[10]  Williams argues that had the statements been suppressed, he would not have taken the stand.  See Doc. 2 at 6.  But as the Superior Court reasoned, Williams' only opportunity to rebut the Commonwealth's evidence was by taking the stand, so he would have been in a worse position by not testifying at all.  Williams has therefore not established that the outcome of the trial would have been different had he not taken the stand.

In his Memorandum of Law, Williams argues that the standard enunciated in United States v. Cronic, 466 U.S. 648 (1984), rather than the Strickland standard should apply in his case.  See Doc. 2 at 7.  In Cronic, the Supreme Court held that there are certain circumstances wherein counsel's action or inaction is presumed prejudicial to the defense without requiring the petitioner to establish prejudice.  Wright v. VanPatten, 552 U.S. 120, 124 (2008) (citing Cronic, 466 U.S. at 658; Bell v. Cone, 535 U.S. 685, 695 (2002)).  Specifically, the Supreme Court has held that the prejudice is presumed when

---

[10]Williams' testimony was consistent with his statements except that in his statements Williams denied knowing Harold, see N.T. 1/5/06 at 227, 229, when in fact they knew each other from prison which Williams confirmed in his trial testimony.  See N.T. 1/6/06 at 19.

22

"counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," or where "there [is] a breakdown in the adversarial process" such that "counsel entirely fails to subject the prosecutor's case to meaningful adversarial testing." Cronic, 466 U.S. at 659, and n.25. Such is not the case here.

In contrast to the situations described in Cronic, in this case, defense counsel vigorously cross examined the Commonwealth's witnesses, specifically undermining Harold's credibility by focusing on the plea agreement he entered in exchange for his testimony. See N.T. 1/5/06 at 216. Moreover, at the PCRA evidentiary hearing, trial counsel explained that she did not seek suppression of Williams' statements because they were consistent with the defense Williams wanted her to advance at trial – that he was an unknowing participant in the robbery and was subsequently carjacked. N.T. 6/5/08 at 24. The only evidence of this theory was Williams' own testimony. Williams' prior statements only strengthened trial counsel's argument because Williams' story did not change. He consistently contended that he was unaware of the robbery and was ultimately carjacked. In short, there were strategic reasons for counsel to elect not to challenge the statements and her actions certainly did not rise to the level of a denial of counsel or an adversarial proceeding allowing a presumption of prejudice under Cronic. Thus, the Superior Court properly identified the correct governing legal standard – Strickland – and properly applied that standard to require a showing of prejudice that Williams failed to make.

2.      **Sufficiency of the evidence supporting the robbery conviction**

In his direct appeal, Williams alleged that the evidence was insufficient to support his conviction for robbery.  Principles of due process dictate that a person can be convicted of a crime only by proof of every element of the charged offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970).  In reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson, 443 U.S. at 319) (emphasis in original).  Moreover, under AEDPA, a writ of habeas corpus may be issued for evidentiary insufficiency only if the state courts have unreasonably applied either the Jackson "no rational trier of fact standard," or the state equivalent of the Jackson standard.  See Smith v. Vaughn, No. 96-8482, 1997 WL 338851, at *7 (E.D. Pa. June 17, 1997).

In Pennsylvania, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury."  18 Pa. C.S.A. § 3701(a)(1)(ii).  To be guilty as an accomplice, Pennsylvania law states:

> A person is an accomplice of another person in the
> commission of an offense if:

> (1) with the intent of promoting or
> facilitating the commission of the
> offense, he:
> (i) solicits such other person to
> commit it; or
> (ii) aids or agrees or attempts to
> aid such other person in planning
> or committing it; or
> (2) his conduct is expressly declared by law
> to establish his complicity.

Id. § 306.

Here, it is undisputed that Harold robbed Bob's Mobil Station. Mr. Johnson, the clerk at Jim's Mobil, identified Harold and said that Harold threatened to shoot him if he did not give Harold the cash in the drawer. N.T. 1/5/06 at 127. Harold admitted he robbed the Mobil station. Id. at 189. The question is whether the evidence was sufficient to establish that Williams was Harold's accomplice.

Judge Hazel found that there was sufficient evidence to support the conviction.

> Harold testified at trial that he and [Williams] agreed to rob Bob's Mobil Station and drove out intending to commit the robbery. After robbing the shift manager Harold jumped into the taxicab driven by [Williams]. When Officer Hill attempted to stop the vehicle [Williams] sped off, leading police on a high-speed chase. Evidence of a defendant's flight after the commission of a crime may be relevant to a defendant's consciousness of guilt. . . . [Williams] chose the intended target and approached Harold with the plan to rob the Mobil Station, soliciting his participation. Defendant supplied the guns used in the robbery and provided the taxicab that became the getaway vehicle. . . . Finally, [Williams] chose Bob's Mobil Station as the intended target. While [Williams] was not observed on a surveillance tape or identified by Mr. Johnson, the surrounding facts support the

>   conclusion that [Williams] solicited, aided, and abetted Daniel
>   Harold's participation n the robbery.

Commonwealth v. Williams, No. 864-05, Opinion, at 9-10 (Del. C.C.P. Jul. 26, 2006).

As previously stated, on habeas review, the federal court reviewing a sufficiency claim must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Sullivan, 723 F.2d at 1083-84.  Mr. Harold's testimony, corroborated by the physical evidence (including the two guns and baseball cap), supports the jury's determination that Williams was Harold's accomplice in robbing the Jim's Mobil.  Judge Hazel's determination is consistent with the Jackson standard and consistent with the facts at trial.

## III.   **CONCLUSION**

Williams raises two cognizable habeas claims that were properly presented to the state courts.  His claim based on the weight of the evidence provides no basis for habeas relief.  The remainder of his claims are procedurally defaulted.  The two exhausted claims were properly considered by the state courts and their conclusions are neither contrary to nor involved  an unreasonable application of the governing federal law or an unreasonable determination of the facts.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this    31st          day of    August                  , 2011, IT IS

RESPECTFULLY RECOMMENDED that the Request to Amend the Petition (Doc. 7) be

GRANTED, and the petition for writ of habeas corpus, as amended be DENIED.  There

has been <u>no</u> substantial showing of the denial of a constitutional right requiring the

issuance of a certificate of appealability.  Petitioner may file objections to this Report and

Recommendation.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely objections may

constitute a waiver of any appellate rights.

/S/ELIZABETH T. HEY

_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

27